**JELLICO COMMUNITY HOSPITAL, INC., Petitioner/Appellant,**

v.

**TENNESSEE DEPARTMENT OF HEALTH, Respondent/Appellee.**

Court of Appeals of Tennessee, Middle Section.

April 7, 1995.

Application for Permission to Appeal Aug. 28, 1995.

456

William B. Hubbard, Weed, Hubbard, Berry & Doughty, Nashville, for appellant.

Charles W. Burson, Attorney General and Reporter, Sue A. Sheldon, Assistant Attorney General, Nashville, for appellee.

*OPINION*

TODD, Presiding Judge.

The petitioner, Jellico Community Hospital, Inc., has appealed from the judgment of the Trial Court affirming an administrative decision of the Commissioner of Health which denied the request of petitioner that he recompute its Medicaid Disproportionate Share Adjustment for the fiscal years, 1988 and 1989.

On appeal, petitioner presents the following issues for review:

1. Whether federal law requires the Department to consider out-of-state Medicaid days when calculating Medicaid disproportionate share payments (MDSA).

2. Whether the Department erred by calculating MDSA due Jellico on instate Medicaid days without taking into consideration the Medicaid days provided by Jellico to out-of-state residents.

3. Whether the Department determined the MDSA due Jellico on the "best information available" as required by its rules.

4. Whether the Department erred by failing to request on its cost report form the total number of Medicaid days including out-of-state Medicaid days since this was necessary to accurately calculate MDSA.

5. Whether the Department erred by using a figure from Jellico's Cost Report for purposes of calculating its MDSA which the Department knew reflected only instate Medicaid days and not the total number of Medicaid days experienced by the hospital.

6. Whether the Department had a duty to attempt to accurately determine by survey or otherwise Jellico's total number of Medicaid days for purposes of computing MDSA.

7. Whether the Department erred by failing to compute Jellico's MDSA from its Joint Annual Report which lists Jellico's total number of Medicaid days.

8. Whether the Department erred by refusing to recompute MDSA due Jellico for fiscal years 1988 and 1989 by taking into account its out-of-state Medicaid days.

9. Whether the Department erred by refusing to pay Jellico the funds owed to it based upon a computation of its MDSA for fiscal years 1988 and 1989 that takes into account its out-of-state Medicaid days.

The Tennessee Department of Health, headed by the Commissioner of Health, has the responsibility of disbursing Medicaid funds to hospitals for health care services provided by them to qualified indigents. The Department (Commissioner) makes payments to each hospital in accordance with a pre-determined "rate per day" based upon cost reports submitted by the hospital for the second fiscal year preceding the fiscal year of rendition of service.

For example, the "per diem" payable to a hospital for services rendered in fiscal year 1994/1995 would be based upon the cost report of that hospital for fiscal year 1992/1993.

The "pass through" or standard component of the "rate per day" is based upon ordinary expenses of operation, and is not involved in the present controversy.

A few hospitals have special expense problems not faced by hospitals generally. For these hospitals, in February, 1987, the Department established a "Medicaid Disproportionate Share Adjustment" (MDSA) which is computed and added to the standard or "pass through" rate to determine the per diem compensation of the hospital. One of the criteria for granting MDSA is the percentage of service rendered to Medicaid patients who reside outside the State.

The annual cost report of each hospital is submitted on a form supplied by the Department, which form includes a space for "in patient days," which is the number of patient/days regardless of residence of patients. Instructions on the form direct that non-resident patient days are not to be included in the total placed in this space because Tennessee does not pay health care costs of non-resident indigents. No other space is provided on this form for non-resident patient days.

Although other hospitals reported their non-resident days elsewhere on the report form, petitioner did not in any way report to the Department its non-resident patient days in years prior to March, 1990. As a result, petitioner was not granted any MDSA for the fiscal year 1987/1988 because its cost report for 1985/1986 contained no information of non-resident patients. Likewise, no MDSA for non-residents was granted for the year 1988/1989, because no non-resident patients were reported in the year 1986/1987.

On March 29, 1990, petitioner reported the number of non-resident Medicaid days during the year 1987/1988, and the Department adjusted the per diem for the year 1989/1990 to include MDSA.

On August 8, 1990, petitioner requested that the Department recompute the per diem for the years 1987/1988 and 1988/1989 based upon a late report of non-resident patient days during the years 1986/1987 and 1985/1986. This request was refused on August 30, 1990 in a letter from the office of the State Comptroller reading as follows:

We have received, from the Medicaid Bureau, a response to your request to have disproportionate share payments for two prior years adjusted. Medicaid policy requires filing of an obligation within one year. Therefore, disproportionate share payments for the 1987/1988 and 1988/1989 fiscal years cannot be recomputed. We have already corrected your 1988 cost report which affects disproportionate share payments for fiscal year 1989/1990.

On November 27, 1990, the Bureau of Medicaid of the Department rendered its decision as follows:

Jellico Community Hospital has asked that a revision be made to their Medicaid Disproportionate Share Adjustment (MDSA) for fiscal years 87/88 and 88/89 based on information included in revised cost reports submitted for fiscal years 1986 and 1987. Our position is that an adjustment is not allowable under the current system and support for this position is as follows:

—The State Plan provides that a redetermination of the MDSA be made each year at the same time the new pass through component is determined on the basis of the best information available. The Plan further provides that the MDSA will not be changed until the next scheduled redetermination. (copy attached)

—Rule 1200–13–5–.04 provides that cost reports shall be submitted not later than three months from the end of each provider's fiscal year, and Jellico Community Hospital did not submit the revised cost reports within this time frame. (copy attached)

—42 CFR 447.45(d)(1) provides that the Medicaid agency must require providers to submit all claims no later than twelve (12) months from the date of service and the requested adjustments in payment are not within the twelve (12) month limitation. (copy attached)

—Proposed Rule 1200–13–1–.06 provides that requests to adjust the payment amount of previously adjudicated claims must be submitted within one (1) year of the date of adjudication by Medicaid and the requested adjustments in payment are not within the one (1) year limitation. Although the rule is not yet final, this guideline has been followed for some time. (copy attached)

—There would be no advantage to the state in making the adjustment.

Also attached is a copy of my memo to Ron Paolini which advised that Jellico community Hospital's MDSA payment for fiscal years 87/88 and 88/89 cannot be adjusted due to the State Plan provision mentioned above.

Please handle the attached as a contested case. If you have questions, please contact me.

Upon request of petitioner a contested administrative hearing was held before an administrative judge who filed a comprehensive order containing detailed findings of fact and conclusions of law and concluding as follows:

Based upon the foregoing, it is hereby ordered that the cost reports filed by the petitioner for the 1986 and 1987 reporting periods may not be amended at this time so as to reflect the non-resident medicaid patient days, and accordingly, it is further ordered that the petitioner's request to recompute its MDSA for fiscal years 1988 and 1989 is hereby denied.

Thereafter, the designee of the Commissioner of Health filed a final order stating:

Upon examination of the record, transcript of the contested case proceedings and briefs submitted by the parties, the findings of fact, conclusions of law and the determination of the administrative judge contained in the initial order and attached hereto as appendix A, are hereby affirmed and incorporated by reference herein.

Upon petition for judicial review, the administrative order was affirmed by the Trial Court.

Petitioner first insists that federal Medicaid law required MDSA to be allocated and paid by states.

The defendant concedes that the federal Medicaid law requires MDSA to be granted in appropriate circumstances, and insists that it has done so when petitioner timely furnished information for ascertainment of qualification and amount. The issue in the present appeal is whether there is any federal requirement that defendant belatedly re-ascertain eligibility and amount when the information is furnished one and two years late.

Petitioner complains that the Department was remiss in failing to provide a space in its annual report form for reporting services to non-resident patients. Defendant responds that its report form was designed for other purposes and that petitioner was or should have been aware of the necessity to timely furnish the information in order to receive the benefit.

Petitioner argues that, even though the non-resident patients were not included in its report for the two subject years, the information was in the hands of defendant in a "Joint Annual Reports." The Assistant Commissioner for Medicaid Services testified:

Q. Who determines what's the best information available for the purposes of calculating disproportionate share?

A. The Bureau of Medicaid does that.

Q. Why don't you look at the joint annual report to determine the total Medicaid days?

A. Because many times the joint annual reports are not as accurate as we would like them to be. They're not complete at the time we're doing this, whereas, the cost report has the more valid, accurate type of information that we want to try to use.

Q. But the joint annual report, does, in fact, include both out-of-state and in-state Medicaid days, does it not?

A. I believe it does, yes.

Q. And this information doesn't appear on the cost report?

A. That is correct. It doesn't appear on the cost report.

Q. So the best information available to determine the total Medicaid days would be the joint annual report, would it not?

A. That would not be my interpretation. You have to understand, over the years we have had some real problems with information on the joint annual reports. It's just notoriously wrong. They've not been accurate, and they have been proven not to be accurate. We've made a conscious effort with the Hospital Association, and through streamlined definitions over a period of time, to try to improve that. But that would not be what I would consider to be the best source of information available for qualifying hospitals.

Petitioner's controller testified:

Q. Now, for what period of time does the joint annual report cover?

A. It covers the hospital's fiscal year, which is the December year end.

Q. And for what period of time does the cost report cover that's submitted to the State?

A. That is the Medicare–Medicaid year, which is June 30, year-end.

Q. If you're looking for the total Medicaid days for 1987, is that figure more accurately reflected in your cost report under Title 19, or is it more accurately reported in the joint annual report?

A. It would be the joint annual report, because the cost report only includes Tennessee days so that the remaining computations will be correct. With the joint annual report, that includes all Medicaid days.

It is apparent that the number of non-resident patient days during a year ending June 30 could not be ascertained from reports of non-resident patient days during years ending December 31.

■ Petitioner argues that the joint annual reports should have been utilized because they were the "best information available." This Court does not agree because, for the fiscal year ending June 30, the reports contained no information at all except that some unstated number of non-residents were probably treated during the fiscal year ending the previous December 31. This may have been notice to the Department that petitioner might be eligible for MDSA. This Court does not consider that, such notice would require the Department to seek out the necessary detailed information which should have been supplied by petitioner.

■ Petitioner argues that the Department gave inadequate reasons for refusing to recompute (retroactively allow) MDSA for the years 1987/1988 and 1988/1989.

The first reason assigned by the Department, quoted above was:

—The State Plan provides that a redetermination of the MDSA be made each year at the same time the new pass through component is determined on the basis of the best information available. The Plan further provides that the MDSA will not be changed until the next scheduled redetermination. (copy attached)

It is self evident that if an allowance is to be paid in monthly installments during a year, the amount of the allowance must be determined prior to the beginning of the year (July 1). The allowance cannot be based upon the experience of the immediately preceding year (ending June 30) because the report for that year could not be compiled overnight, but would arrive sometime after July 1. Thus, all determinations based upon reports for the second preceding year which would be the latest reports in the hands of the Department at the time of the determination (before July 1).

It appears to this Court that the first reason assigned by the Department is reasonable in the light of the peculiar situation just stated.

■ Appellant next challenges the requirement that all information be reported within 12 months. The reasonableness of this requirement is explained in the above details which indicate that information for establishing payments during a fiscal year must be in the hands of the Department before the beginning of that year. If the information relates to the second preceding year, it must be reported during the next, immediately preceding, year in order to be on hand for use in respect to the following year.

■ Petitioner next challenges the rule of the Department that, once a determination of MDSA has been made, it will not be changed until the next scheduled (annual) determination. It is true that, enforced literally, the rule might result in patent injustice because of human error in calculations. However, the present case does not present such a patent case of injustice from error, but of loss of benefit by failure to claim it. The ordinary handicaps of late reporting and investigation, inconvenience, expense of recomputing and rewriting records and of funding any amount belatedly granted, are ample reasons for application of the rule in the present case.

The administrative decision is supported by substantial and material evidence, is not arbitrary or capricious and is rationally based. It must therefore be affirmed. T.C.A. § 4–5–322(h); *C.F. Industries v. Tenn. Public Service Commission,* Tenn. 1980, 599 S.W.2d 536.

The judgment of the Trial Court is affirmed, and the cause is remanded to the Trial Court for any necessary further proceedings. Costs of this appeal are taxed against the petitioner-appellant.

Affirmed and Remanded.

LEWIS and CANTRELL, JJ., concur.